# EXHIBIT A

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
CALENDAR: 03
PAGE 1 of 27
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CYNTHIA DIXON, individually, and on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| THE WASHINGTON AND JANE SMITH ) | JURY TRIAL DEMANDED |
| COMMUNITY - BEVERLY, an Illinois Not- ) | |
| For-Profit Corporation d/b/a SMITH SENIOR ) | |
| LIVING, SMITH CROSSING, and SMITH ) | |
| VILLAGE, KEVIN McGEE, MARTI JATIS, ) | |
| and KRONOS, INC., ) | |
| ) | |
| Defendants. | |

## COMPLAINT

Plaintiff Cynthia Dixon brings this Complaint ("Complaint") against Defendants The Washington and Jane Smith Home, an Illinois not-for-profit corporation, d/b/a Smith Senior Living, Smith Crossing, and Smith Village (collectively "Smith"), Kevin McGee ("McGee"), and Marti Jatis ("Jatis") for terminating her in direct response to her challenge to Smith's classification of her as "exempt" under state and federal wage law, for failing to pay her minimum and overtime wages for all hours worked, and for failing its contractual obligation to pay for her work-related cellular device. Plaintiff also brings this matter individually and on behalf of other similarly-situated individuals against Smith and Kronos, Inc. ("Kronos"), to put a stop and redress Smith's unlawful collection, use, storage, and disclosure of Plaintiff's and the proposed Class' sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 2 of 27

## NATURE OF THE ACTION

1.      Defendant The Washington and Jane Smith Home operates three life plan communities doing business as, Smith Senior Living, Smith Crossing, and Smith Village, in Cook County, Illinois.

2.      When Smith hires an employee, he or she is enrolled in its employee database. Smith uses the employee database to monitor the time worked by its hourly employees.

3.      While most employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Smith's employees are required to have their fingerprints scanned by a biometric timekeeping device.

4.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Smith's employees to serious and irreversible privacy risks. For example, if a database containing fingerprint or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Equifax breach – employees have _no_ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this information.

5.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, _et seq._, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

6.      Despite this law, Smith disregards employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of BIPA. Specifically, Smith has violated and continue to violate BIPA because it did not and continues not to:

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 3 of 27

    a.    Properly inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c.    Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

7.    Additionally, and based on information and belief, Smith violates BIPA by disclosing employee fingerprint data to an out-of-state third-party vendor, Kronos.

8.    Smith and Kronos had actual knowledge and are directly liable for the BIPA violations alleged herein.

9.    Accordingly, Plaintiff, individually and on behalf of the putative Class, seeks an Order: (1) declaring that the conduct of Smith and Kronos violates BIPA; (2) requiring Smith and Kronos to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

10.    Plaintiff Dixon is a natural person and a citizen of the State of Illinois.

11.    Defendant Smith is a not-for-profit corporation registered to do business in Illinois. Smith is an "employer" as defined by the IMWL, 820 ILCS 015/3, and as defined by the IWPCA, 820 ILCS 115/2 and operates life plan communities for persons over the age of 62 in Cook County, Illinois. Upon information and belief, Smith maintains employee files.

12.    At all times material, Defendant Kevin McGee was the Chief Executive Officer of Smith and is an "employer" as defined by the IMWL, 820 ILCS 015/3, and as defined by the IWPCA, 820 ILCS 115/2. In this capacity, McGee had the authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, the

authority to sign on corporate checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour issues, including the decisions regarding payroll and other capital expenditures.

13.     At all times material, Defendant Marti Jatis was the Executive Director of Smith Village and is an "employer" as defined by the IMWL, 820 ILCS 015/3, and as defined by the IWPCA, 820 ILCS 115/2. In this capacity, Jatis had the authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, the authority to sign on corporate checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour issues, including the decisions regarding payroll and other capital expenditures.

14.     Defendant Kronos, Inc., is a Massachusetts corporation registered to do business in Illinois. Upon information and belief, Kronos provides biometric timekeeping devices to Smith and its life plan communities.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 4 of 27

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Smith pursuant to 735 ILCS 5/2-209 because it conducted business transactions in Illinois, committed statutory violations and tortious acts in Illinois, is registered to conduct business in Illinois, and is headquartered in Illinois.

16.     This Court has jurisdiction over Kronos pursuant to 735 ILCS 5/2-209 because it conducts business in Illinois, has committed statutory violations and tortious acts in Illinois, and is registered to do business in Illinois.

17.     Venue is proper in Cook County because Defendant Smith maintains its principal places of business in Cook County and all Defendants conduct business transactions in Cook County. Venue is additionally proper because Plaintiff resides in Cook County.

4

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 5 of 27

## FACTS

I.   **The Biometric Information Privacy Act.**

18.   In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

19.   In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

20.   Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

21.   BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or

otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

22.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosures. *See* 740 ILCS 14/15(d)(1).

24.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 6 of 27

satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

25. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual has no recourse and is at heightened risk for identity theft.

26. Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II. Smith and Kronos Violate the Biometric Information Privacy Act.

27. By the time BIPA passed through the Illinois legislature in mid-2008, most retailers who had experimented using employees' biometric data stopped doing so.

28. Unfortunately, Smith failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Smith continues to collect, store, and use employees' biometric data in violation of BIPA.

29. Specifically, when employees first become hired at Smith, they are required to have their fingerprints scanned by the Kronos fingerprint scanner to enroll them in Smith Senior Living's or Smith Village's employee database.

30. Upon information and belief, Smith also fails to inform its employees that it discloses employees' fingerprint data to an out-of-state third-party vendor, Kronos; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data, and fails to obtain written releases from employees before collecting their fingerprints.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 7 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 8 of 27

31.     Nor does Smith or Kronos provide the employees with a written, publicly available policy identifying their retention schedule, nor guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

32.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing a fingerprint but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Smith and Kronos disregard these obligations and instead unlawfully collect, store, and use employees' biometric identifiers and information, without ever receiving the individual informed written consent required by BIPA.

33.     Smith employees are not told what might happen to their biometric data if and when its local communities go out of business or, worse, if and when the business of either Smith or Kronos folds.

34.     Because neither corporate Defendant publishes a BIPA-mandated data retention policy nor discloses the purposes for their collection of biometric data, Smith's employees have no idea whether these Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. Nor are Plaintiff and the putative Class told to whom Smith and Kronos currently disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

35.     By and through the actions detailed above, Smith and Kronos not only disregard the Class' privacy rights, but they also violate BIPA.

### III.   Plaintiff Dixon's Experience

36.   Plaintiff worked for Smith's facility doing business as "Smith Senior Living", located at 2320 West 113th Place, Chicago, Illinois, from February 20, 2017, to September 5, 2017.

37.   As a new employee, Plaintiff was required to scan her fingerprint so Smith could use it as an authentication method to track her time.

38.   Smith subsequently stored Plaintiff's fingerprint data in its database(s).

39.   Each time Plaintiff began and ended her workday, she was required to scan her fingerprint.

40.   Plaintiff has never been informed of the specific limited purposes or length of time for which Smith or Kronos collected, stored, or used her fingerprints.

41.   Plaintiff has never been informed of any biometric data retention policy developed by Smith or Kronos, nor has she ever been informed whether Smith or Kronos will ever permanently delete her fingerprints.

42.   Plaintiff has never been provided with nor ever signed a written release allowing Smith or Kronos to collect or store her fingerprints.

43.   Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Smith and Kronos' violations of BIPA alleged herein.

44.   A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Plaintiff and the putative Class suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when they had no right to do so, an invasion of Plaintiff's and the putative Class' right to privacy. BIPA protects employees like Plaintiff and the putative class from this precise conduct, and neither Smith nor Kronos had any right to secure this data absent a specific legislative license to do so.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 9 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 10 of 27

45.     Plaintiff and the putative Class also suffered an informational injury because neither Smith nor Kronos provided them with information to which they were entitled by statute. Through BIPA, the Illinois legislature has created a right – an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

46.     Pursuant to 740 ILCS 14/15(b), Plaintiff and the putative Class were entitled to receive certain information prior to either corporate Defendant securing their biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which it collects, stores, and uses their fingerprint; information regarding Smith and Kronos' biometric retention policy; and, a written release allowing Smith and Kronos to collect and store their private biometric data. By depriving Plaintiff of this information, Smith and Kronos injured her and the putative Class she seeks to represent. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

47.     Finally, as a result of the conduct of the corporate Defendants, Plaintiff has experienced personal injury in the form of mental anguish. For example, Plaintiff experiences mental anguish and injury when contemplating what would happen to her biometric data if either Smith or Kronos went bankrupt, whether they will ever delete her biometric information, and whether (and to whom) they share her biometric information.

48.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries Smith and Kronos have caused.

## IV. Smith Violated the IMWL, IWPCA, and Illinois Common Law

49. While Plaintiff worked for Smith, she was an hourly employee earning approximately $16.44 per hour.

50. During her employment, Plaintiff typically worked approximately 60 hours each week.

51. In or around April 2017, the Environmental Services Manager ("ESM") at Smith Senior Living was placed on a performance improvement plan.

52. During this time, Plaintiff was charged with the ESM duties of interviewing cleaners and maintenance personnel, creating schedules, approving time off, and sitting in on supervisory meetings as a substitute for the ESM role.

53. Plaintiff's title and pay did not change as a result of these additional duties.

54. However, Plaintiff was required to work off-the-clock for Smith beginning at this time.

55. At this time, Plaintiff began receiving calls, text messages, and emails after her regular shift times both from her supervisors, Ashley Castro and Marti Jatis, and from employees on the environmental services team.

56. Plaintiff informed Ashley Castro and Chris August, Smith's Corporate Environmental and Safety Director, of these calls and messages she received after her shifts, who agreed on behalf of Smith to reimburse Plaintiff for her cellular phone charges.

57. Smith did reimburse Plaintiff in June 2017 for her cell phone charges from April through June 2017.

58. On or around July 19, 2017, Smith demoted and transferred the ESM after he failed his improvement plan.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 11 of 27

11

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 12 of 27

59.     On or about July 24, 2017, Smith assigned Plaintiff the duties of the ESM position including, but not limited to, scheduling the environmental services team, making their assignments, and supervising the environmental services team.

60.     Smith did not change Plaintiff's title or pay as a result of these additional duties.

61.     As a result of her additional duties, Plaintiff frequently had to work from home via her cell phone. Smith designated Plaintiff and provided her personal phone number as a contact for other employees to call when they encountered a problem after hours. As a result, Plaintiff frequently received and responded to calls, emails, and text messages from her supervisor and individuals on the ESM staff after hours and without pay.

62.     Additionally, in or about June 2017, Smith required Plaintiff to become trained and certified by the Federal Emergency Management Agency ("FEMA"), and to prepare presentations for Smith's Emergency Preparedness Committee.

63.     From May to August 2017, Plaintiff worked an estimated 100 to 200 hours of unpaid overtime to complete training and certification from FEMA, researching information on policies and procedures for a disaster plan, training for floor care, and preparing presentations for the Emergency Preparedness Committee.

64.     On August 30, 2017, Smith formally offered Plaintiff a salaried position as the ESM. Smith advised Plaintiff that she would have housekeepers, laundry aids, and floor workers working underneath her, and she would not work on maintenance.

65.     Smith offered Plaintiff a salary of $43,000. Upon information and belief, the previous ESM's salary was $48,000.

12

66.     During this meeting, a Smith Human Resources employee, Karen Jellema, informed Plaintiff that she only had to read the second page of her packet of onboarding paper work.

67.     Plaintiff asked for and was permitted a day to review the full paperwork.

68.     On Thursday, August 31, 2017, Plaintiff sent an email to her directors, Ashely Castro and Marti Jatis, challenging whether the offered salary complied with the salary threshold established by the federal government to properly classify employees as "exempt".

69.     On Friday, September 1, 2017, Plaintiff was called into a meeting with her supervisor, Karen Jellema and Marti Jatis during which she was told that her questions about the position and her salary would be answered after the holiday weekend, on Tuesday, September 5, 2017.

70.     On September 5, 2017, Smith terminated Plaintiff's employment, claiming that Plaintiff's department was being restructured, and that she was being terminated for working past the end of her shift on two occasions.

71.     Karen Jellema also told Plaintiff at least two times that Plaintiff was "wrong" with respect to the salary threshold for properly classifying employees as "exempt."

72.     Smith never paid Plaintiff for her estimated 200 hours + of overtime from her work in connection with FEMA certification and Emergency Preparedness Committee presentations, or the overtime she worked receiving and responding to phone calls, texts and emails after hours, in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 10-5/1, *et seq.*

73.     Smith also failed to reimburse Plaintiff for her cellular phone expenses for the work-related calls despite a contractual obligation to do so, in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 13 of 27

13

74.     Prior to her termination, Plaintiff had never received any write-ups, warnings, or other disciplinary actions from any of her supervisors.

## CLASS ALLEGATIONS

75.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Named Plaintiff brings claims on her own behalf and as a representative of all other similarly situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

76.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

77.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801 for the following class of similarly situated employees under BIPA:

> All in individuals working for Defendant in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by the Defendant during the applicable statutory period.

78.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 14 of 27

C.    The claims of the Named Plaintiff are typical of the claims of the class; and,

D.    The Named Plaintiff will fairly and adequately protect the interests of the class.

<u>Numerosity</u>

79.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Smith's payroll records.

<u>Commonality</u>

80.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Named Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

A.    Whether Smith or Kronos collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.    Whether Smith or Kronos properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

C.    Whether Smith or Kronos obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

D.    Whether Smith or Kronos has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.    Whether Smith or Kronos has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.    Whether Smith or Kronos developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

G.    Whether Smith or Kronos comply with any such written policy (if one

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 15 of 27

exists);

H.    Whether Smith or Kronos used Plaintiff's and the Class's fingerprints to identify them; and

I.    Whether the violations of BIPA were committed negligently.

81.    Plaintiff anticipates that Smith and Kronos will raise defenses that are common to the class.

## Adequacy

82.    The Named Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Named Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

83.    The claims asserted by the Named Plaintiff are typical of the class members she seeks to represent. The Named Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

84.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

## Predominance and Superiority

85.    The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 16 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 17 of 27

individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

86. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the corporate Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION
#### Violation of 740 ILCS 14/1, *et seq.*
#### (On Behalf of Plaintiff and the Class and Against Smith and Kronos)

87. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any public entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs

17

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 18 of 27

the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

89.     BIPA also prohibits public entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

90.     BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the customer); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

91.     Smith and Kronos each fail to comply with these BIPA mandates.

92.     Defendant The Washington and Jane Smith Home, d/b/a Smith Senior Living and Smith Village, is registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

93.     Defendant Kronos, Inc., is a Massachusetts corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

94.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Smith and Kronos (in the form of their fingerprints), as explained in detail in Section II, *supra*. *See* 740 ILCS 14/10.

95.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

96.     Smith systematically and automatically collected, used, stored, and disclosed Plaintiff's and the Class's biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

97.     Upon information and belief, Smith systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to an out-of-state third-party vendor, Kronos.

98.     Neither Smith nor Kronos properly informed Plaintiff or the Class in writing that their biometric identifiers or biometric information were being collected and stored, nor did they inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

99.     Neither Smith nor Kronos provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

100.    By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Smith and Kronos violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

101.    On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Smith and Kronos to comply with BIPA's requirements for the collection, storage, and

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 19 of 27

use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
Negligence
**(On Behalf of Plaintiff and the Class and Against Smith and Kronos)**

102.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

103.   Smith and Kronos owed Plaintiff and the Class a duty of reasonable care. That duty required Smith and Kronos to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

104.   Additionally, Smith owed Plaintiff and the Class a heightened duty – under which it assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

105.   Smith and Kronos breached their duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

106.   Specifically, Smith and Kronos breached their duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length for which their fingerprints were being collected, stored, and used.

107.   Smith and Kronos also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 20 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 21 of 27

108.     Smith and Kronos' breach of their duties proximately caused and continues to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

109.     Accordingly, Plaintiff seeks an order declaring that Smith and Kronos' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

### THIRD CAUSE OF ACTION
#### Violation of the IMWL
#### Failure to Pay Minimum Wage for All Hours Worked
#### (On Behalf of Plaintiff, Individually, Against Smith, McGee and Jatis)

110.     Plaintiff incorporates each of the above paragraphs as if fully stated herein.

111.     Plaintiff brings claims on her own behalf and pursuant to the IMWL, 820 ILCS 105/1, *et seq.*, to recover unpaid wages, unpaid overtime compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

112.     Section 105/4(a) of the IMWL requires employers to pay employees one and one-half times their regular rate for all hours worked over forty (40) per work week. Section 105/12 of the IMWL provides that employers who violate the provisions of the IMWL are liable to affected employees for unpaid wages, costs, attorneys' fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

113.     Plaintiff is not subject to any exemption from the IMWL.

114.     Smith failed to create or maintain accurate time records of the time Plaintiff worked, in violation of the IMWL, 820 ILCS § 105/8.

115.     As a result of Smith's violations of the IMWL, Plaintiff has suffered a loss of income and other damages.

21

116.   As a result of the unlawful acts of Smith, McGee and Jatis, they are liable to Plaintiff for actual damages, statutory damages, and equitable relief, as well as reasonable attorneys' fees, costs, and expenses.

**FOURTH CAUSE OF ACTION**
**Violation of the IMWL**
**Retaliation**
**(On Behalf of Plaintiff, Individually, Against Smith, McGee and Jatis)**

117.   Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

118.   Plaintiff informed her supervisors at Smith of the work she performed after the end of her shift before August 30, 2017. Defendant approved of this time and guaranteed reimbursement to Plaintiff.

119.   On August 30, 2017, Smith offered Plaintiff the ESM position. Plaintiff was offered a salary of $43,000. Plaintiff asked for and was permitted a day to review the full paperwork.

120.   By challenging whether her proposed salary complied with legal guidelines regarding exempt employees, Plaintiff engaged in protected activity as defined by the IMWL.

121.   Within a week of challenging her status as exempt, Plaintiff was terminated.

122.   Defendant's termination of Plaintiff's employment was causally related to her demands as set forth above.

123.   As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that she would have had but for Defendant's violation.

124.   As a result of the retaliation, Plaintiff should be awarded back pay with interest.

125.   As a result of the retaliatory discharge, Plaintiff should be awarded compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 22 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 23 of 27

### FIFTH CAUSE OF ACTION
#### Violation of the IWPCA
#### (On Behalf of Plaintiff, Individually, Against Smith, McGee and Jatis)

126.    Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

127.    At all times material, Plaintiff was Smith's "employee" as defined by the IWPCA, 820 ILCS 115/2.

128.    At all times material, Smith was a corporation that paid compensation owed to employees and was thus an "employer" as defined by the IWPCA, 820 ILCS 115/2.

129.    Plaintiff and Smith entered into an agreement which is a valid and enforceable "contract or employment agreement" as defined by the IWPCA ("Employment Agreement").

130.    Pursuant to Plaintiff's and Smith's agreement, Smith was to reimburse Plaintiff for charges incurred on her personal cellular telephone as a result of receiving and responding to calls, text messages, and emails from Smith employees after hours and off the clock. Such payments constitute "wages" as defined by the IWPCA, 820 ILCS 115/2.

131.    The IWPCA requires employers to pay exempt employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 21 days after the end of the pay period in which such wages were earned. 820 ILCS 115/4.

132.    The IWPCA also requires employers to pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. 820 ILCS 115/2; 820 ILCS 115/5.

133.    As of the filing of this Complaint, Smith has never reimbursed Plaintiff for her cellular phone charges for work-related calls from July 2017 to September 2017.

134.    Smith's failure to pay Plaintiff pursuant to the terms of the parties' Employment Agreement constitutes a violation of the IWPCA.

23

### SIXTH CAUSE OF ACTION
### Illinois Common Law Retaliatory Discharge
#### (On Behalf of Plaintiff, Individually, Against Smith)

135.    Plaintiff incorporates each of the above paragraphs as if fully stated herein.

136.    Defendant's termination of Plaintiff's employment was causally related to her demands as set forth above.

137.    At all relevant times, there existed a clear mandate of Illinois public policy prohibiting discharge from employment for inquiring about or asserting one's rights under Illinois law.

138.    As a result of the retaliatory discharge, Plaintiff should be awarded past lost wages and future loss of earnings, as well as loss of past and future fringe benefits.

139.    As a result of the retaliatory discharge, Plaintiff should be awarded damages for past and future pain and suffering, damages for emotional trauma, and her incidental and consequential damages.

140.    As a result of the retaliatory discharge, Plaintiff is entitled to an award of punitive damages.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Dixon respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Dixon as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that the conduct of Smith and Kronos, as set forth above, violate BIPA;

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 24 of 27

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 25 of 27

C.    Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that the conduct of Smith and Kronos, as set forth above, constitute Negligence;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Smith and Kronos to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

F.    Declare and find that Smith, McGee and Jatis committed one or more of the following acts against Plaintiff, individually:

      a.    Violated the provisions of the IMWL by failing to pay overtime and minimum wages to Plaintiff;

      b.    Violated the provisions of the IWPCA by failing to comply with their Employment Agreement with Plaintiff;

      c.    Retaliated against the Plaintiff.

G.    Award compensatory damages to Plaintiff individually, including all overtime compensation owed, in an amount according to proof;

H.    Award 2% per month interest on all unpaid wages due to Plaintiff individually under the IMWL accruing from the date such amounts were due until it is paid;

I.    Award punitive damages to Plaintiff individually;

J.    Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

K.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

L.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

M.      Provide such further relief as the Court deems just and equitable.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Date:   September 28, 2017                    Respectfully Submitted,

                                              */s/ Haley R. Jenkins*
                                              Ryan F. Stephan
                                              James B. Zouras
                                              Andrew C. Ficzko
                                              Stephan Zouras, LLP
                                              205 N. Michigan Avenue
                                              Suite 2560
                                              Chicago, Illinois 60601
                                              312.233.1550
                                              312.233.1560 *f*
                                              lawyers@stephanzouras.com

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 26 of 27

26

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on September 28, 2017, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

_/s/ Haley R. Jenkins_

ELECTRONICALLY FILED
9/28/2017 10:48 AM
2017-CH-13051
PAGE 27 of 27